

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

February 17, 1939

Hon. J. E. McDonald, Commissioner
Department of Agriculture
Austin, Texas

Dear Sir:

> Opinion No. O-341
> Re: Collection, placement and
> expenditure of administra-
> tion funds raised under
> the Marketing Agreement enter-
> ed into pursuant to the pro-
> visions of House Bill No. 654,
> known as "Texas Citrus Market-
> ing Act," Article 5764a of
> Vernon's Revised Civil Statutes.

We are in receipt of your letter of February 13, 1939, in which you call our attention to various Sections of House Bill No. 654, known as "Texas Citrus Marketing Act," being Article 5764a of Vernon's Revised Civil Statutes, and request an opinion on the following question:

"Whether it is legally necessary that the entire sum of money raised through fees and assessments under the marketing agreement by the proper administrative committee must be reported to the State Comptroller and deposited in the State Treasury before same can be used to defray the operating expenses incurred under the marketing agreement by the administrative committee, or whether it is only legally necessary that the amount of money requisitioned by the Commissioner of Agriculture for the administrative expenses of his department in connection with the functioning of the marketing agreement entered into under the Texas Citrus Marketing Act be so reported to the State Comptroller and deposited in the State Treasury."

For the purpose of answering the above inquiry, we have also taken into consideration the terms and provisions of the amended Marketing Agreement regulating the handling of citrus fruit grown in Cameron, Hidalgo and Willacy Counties between the handlers of citrus fruit in this area and the Commissioner of Agriculture of the State of Texas.

Section 3 of the Marketing Act constitutes the authority and power of the Commissioner of Agriculture for entering into a Citrus Marketing Agreement. It reads as follows:

"Subject to the provisions of this Act, the Commissioner is hereby authorized and empowered to execute marketing agreements and to issue licenses under this Act to persons engaged in transactions of intrastate commerce within the areas of this State in the marketing, processing, packing, shipping, handling or distributing of citrus fruits."

Section 8 (1) of the Marketing Act provides for the creation of "an administrative committee or committees " by the terms of any Marketing Agreement, executed under the Act in the following language:

"Marketing agreements executed and licenses issued under this Act, shall, in addition, contain one or more of the following terms and conditions:

(1) Providing for the selection by the Commissioner, or a method for the selection by the Commissioner, of an administrative committee or committees and defining their powers and duties."

Section 8 (1) of the Act further defines and limits the powers of such administrative committee, to-wit:

(a) To administering such license in accordance with its terms and provisions;

(b) To making rules and regulations to effectuate the terms and provisions of such license;

Hon. J. E. McDonald, February 17, 1939, Page 3.

(c) To receiving, investigating and reporting to the Commissioner complaints of violations of such license;

(d) To recommending to the Commissioner amendments to such license;

(e) To collecting from each handler a fee or assessment representing his pro rata share of such estimated expenses, including expenses incurred in hearings held on, and in the execution of such marketing agreement, as the Commissioner, after the submission to him by such administrative agency or agencies of a proposed budget, finds will probably be required to cover expenditures necessarily to be incurred by such agency or agencies, during any period specified by him, for the maintenance and functioning of such agency or agencies; to receiving, expending and accounting for the funds so collected, and to return to such handler his pro rata share of any unexpended balances which the administrative committee or committees, with the approval of the Commissioner, finds are not so required."

We are concerned with the construction of the above quoted sub-heading (e) of Section 8 (1) of the Act.

It defines the powers of the administrative committee under the Marketing Act, relative to an administration or an operating fund. First, the committee is authorized to collect from each handler of citrus a fee or assessment representing that handler's pro rata share of the estimated expense of administering the Marketing Agreement. The amount of assessment is based upon a budget prepared by the committee and approved by the Commissioner of Agriculture for a fiscal period designated by him. Said amount is to be determined by the Commissioner of Agriculture. Said budget is designed to cover all expenditures which might necessarily be incurred by the committee in administering the terms and provisions of the Act.

Secondly, after submitting the budget to the Commissioner of Agriculture and collecting the assessment or fee decided upon by the Commissioner, the committee is

given the power of "receiving, expending, and accounting for the funds so collected."

Finally, in said Section 8 (1), (e) it is the duty of the committee to return to each contributing handler his proportionate share of any unexpended balance of the administration fund, which the committee or Commissioner of Agriculture finds will not be needed.

The language of sub-heading (e) of Section 8 (1) of the Act, in conclusion, authorizes the committee 1st, to receive the assessments levied by the Commissioner on the basis of the committee's own recommendation; 2nd., to expend such funds and give an accounting; and, 3rd., to return to the handlers any balance which the committee and Commissioner of Agriculture decide is not required to meet the expenses of any fiscal period.

Section 8 (1), (e) thus gives the administrative committee, set up in the Marketing Agreement, extensive control over the operating fund raised by assessment, including the power to make disbursements therefrom.

Section 15 (2), however, while further designating said collected funds for the purposes set out in the Marketing Agreement, requires that a record be kept and a report be filed with the Commissioner of Agriculture from time to time. It reads as follows:

"Any funds collected by the administrative agency from the levying of such fees and assessments shall be used for the purpose set forth in the marketing agreement or license under which it was collected. A full and complete record thereof shall be kept to which the Commissioner may have access at any time, and a report of the activities and proceedings shall be filed with the Commissioner from time to time as he may require."

Thus far it is apparent from the terms of the Marketing Act that the Commissioner of Agriculture, after examining the proposed budget submitted to him by the administrative committee has the right to set the fee or assessment to be levied; that he has the right to approve

the unexpended balance of the administration fund to be divided among the handlers on a pro rata basis; and that he has the right to have access to the records of the committee at any time and receive a report on the handling and disposition of funds by the administrative committee.

Section 17 of the Marketing Act confers upon the Commissioner of Agriculture additional rights and powers in respect to the finances of the administrative committee. It provides as follows:

"... The Commissioner shall thereafter exact and require, by requisition on the appropriate administrative committee or committees, charged with the collection of funds for expenses under such marketing agreement, that such committee or committees collect, report, and pay over monthly to the Commissioner the amount deemed necessary and sufficient, and requisitioned from such administrative committee or committees by the Commissioner, to defray the actual expenses of the Commissioner to be incurred during the subsequent month in the administration and enforcement of any such marketing agreement or license, under such rules and regulations as he may prescribe."

We construe said provision to mean that the Commissioner of Agriculture is entitled to receive from the administration fund any such amount of money as he calculates is necessary and sufficient to cover such actual expenses as he, in his official capacity as Commissioner of Agriculture and the Department of Agriculture, will incur for the next ensuing month, in connection with his duties in administering the Marketing Agreement.

It gives him the authority to requisition the administrative committee, which has control over the operating fund to supply him with such expense money. The language of Section 17 designates "the actual expenses of the Commissioner ... in the administration and enforcement" of the Marketing Agreement as the determining amount of the requisition funds.

The second paragraph of Section 17 deals with "unusued, unexpended and unrequisitioned assessments" in the following language:

"But all moneys collected from assess-
ments, or otherwise, imposed under this Act
and under marketing agreements executed in
pursuance thereof, or licenses issued there-
under, by the administrative committee or
committees created under this Act, not re-
quisitioned by the Commissioner for administra-
tive expenses as hereinbefore provided in this
Section, shall remain in the custody of such
administrative committee or committees until
the close of the current marketing season of
year for which same was collected (not to ex-
tend further than the period covered by such
marketing agreement), at which time the admin-
istrative committee or committees shall return
to such handler or handlers his pro rata share
of such unusued, unexpended and unrequisitioned
assessment or assessments."

Construing Sections 8 (1) (e) and 17 of the Act together, it is apparent that the operating fund composed of assessments or fees levied on the handlers by the administrative committee is subject to three uses.

(1) It is subject to be requisitioned
on a monthly basis by the Commissioner of
Agriculture for an amount necessary to cover
his expenses and the expenses of his depart-
ment incurred through his being a party to
the Marketing Agreement.

(2) It is subject to the authorized ex-
penditures of the committee | Section 8 (1), (e) |
charged with the administration of the Marketing
Agreement set up under the Act.

(3) If at the close of a fiscal period, there
remains any unusued, unexpended or unrequisition-
ed portion of the operating fund, said balance
is divided among the assessed handlers, each
handler receiving his pro rata share of said re-
maining funds.

Section 18 (1) relates to the moneys requisitioned by the Commissioner of Agriculture from the operating fund in the custody of the administrative committee. It provides that:

"All moneys received by the Commissioner hereunder shall be by him, at the end of each month, reported to the State Comptroller and at the same time deposited in the State Treasury. All moneys so credited are hereby appropriated for use of said Commissioner to be expended in accordance with law in carrying out the provisions hereof."

Section 18 (2) requires the Commissioner of Agriculture to "submit quarterly to the administrative agency under each marketing agreement or license a complete statement of receipts and expenditures in connection with the administration of each marketing agreement or license during the quarter."

It is our opinion that the legislative intent behind the Act was that both the Commissioner of Agriculture and the administrative agency, created under the marketing agreement, be authorized and empowered to make necessary expenditures connected with their respective duties and functions in carrying out the terms and provisions of a marketing agreement. Provision is made, both for a check by the Commissioner upon the expenditures of the committee and an accounting by the Commissioner of Agriculture to the administrative committee of his receipts and expenditures. Since the Commissioner of Agriculture is a public official and a State officer, the Act requires that moneys expended by him be reported to the Comptroller and deposited in the State Treasury. The committee, being a private organization set up by a voluntary agreement, is by authority of the Act a custodian of the operating fund and may make expenditures of same without converting said moneys into public funds.

Section 18 states explicity that:

"all moneys collected from assessments ...
not requisitioned by the Commissioner for
administrative expenses ... shall remain in
the custody of such administrative committee
... "

This applies not only to that portion of the
unrequisitioned funds to be returned to the handlers on
a pro rata basis, but also to the moneys to be used and
expended by the committee in properly administering the
terms and provisions of the agreement.

The provisions of the marketing agreement
entered into by the Commissioner of Agriculture and
the handlers of citrus fruit, grown in Cameron,
Hidalgo and Willacy Counties, sustain the construction
we have placed upon the aforementioned sections of the
Act.

Section 1 of Article 2 of the marketing
agreement creates certain administrative agencies in
the following language:

"A Growers Industry Committee and a
Shippers Marketing Committee are hereby
established which shall administer the terms
and provisions of this agreement as here-
inafter specifically provided, and the
membership of which shall be selected
in accordance with the provisions of this
article."

Section 3 (2) of said Article lists the duties
of the Growers Industry Committee as follows:

(a) to act as intermediary between the
Commissioner and the producers and handlers:

(b) to furnish the Commissioner such
available information as he may request;

(c) to appoint such employees as it may
deem necessary and to determine the salaries
and define the duties of any such employees;

(d) to cause the books of the Growers Industry
Committee to be audited by one or more certified
public accountants at least once for each crop
year and at such other time as the Growers
Industry Committee deems necessary or as the
Commissioner may request, and to file with the
Commissioner copies of all audit reports made;
and

(e) to make such estimates of the total
crops of fruit including the grade and size
distribution thereof as may be deemed necessary
by said committee in connection with the
administration of Articles IV and V hereof,
or as may be prescribed by the Commissioner.

(f) to perform such duties in connection
with the administration of the Texas Citrus
Marketing Act as may from time to time, be as-
signed to it by the Commissioner."

Section 5 of Article 2 deals with "funds."  It states:

"All funds received by the Growers Industry
Committee pursuant to any provisions of this
agreement shall be used solely for the purposes
herein specified and shall be accounted for in
the following manner:

(1) The Commissioner may, at any time, require
the Growers Industry Committee and its members to
account for all receipts and disbursements.

(2) Upon the removal or expiration of the
term of office of any member of the Growers
Industry Committee, such member shall account for
all receipts and disbursements and deliver all
property and funds in his hands, together with
all books and records in his possession to his
successor in office, and shall execute such assign-
ments and other instruments as may be necessary
or appropriate to vest in such successor full title
to all of the property, funds and claims vested in
such member pursuant to this agreement."

The implication throughout said sections is that the Growers Industry Committee has full power to make disbursements from the operating fund which it has collected and which remains in its custody.

Article III of the amended Marketing Agreement covers "expenses and assessments."

Section 1 of Article III provides that:

"The Growers Industry Committee is authorized to incur such expenses as the Commissioner may find to be necessary to carry out the functions of both committees under this agreement during the designated fiscal period. The funds to cover such expenses shall be acquired by the levying of assessments upon handlers as hereinafter provided."

Said section conforms with the requirements of Section 8 (1) (e) of the Act which authorizes the committee to make expenditures on the basis of a budget submitted to the Commissioner of Agriculture for a specified period.

Sections 2, 3, 4, 5 and 6 of Article III provide for computation of rate of assessment, payment of same by handler, a proportionate refund, increase rate of assessment and maintenance of suit by the Growers Industry Committee for collection of handler's pro rata share of the expenses.

The above reasoning and construction, placed upon the pertinent sections of the Texas Citrus Marketing Agreement and the amended Marketing Agreement, lead us to the conclusion that the Act requires that only such moneys as might be requisitioned by the Commissioner of Agriculture for the purposes of defraying expenses incurred by himself and his department in administering the provisions of the Act, be reported to the State Comptroller and deposited in the State Treasury.

It is our opinion that the administrative committee is legally authorized and empowered to make necessary and sufficient expenditures and the funds which it uses for operating expenses may, under authority of the Act, remain in its custody, only the unexpended and unusued portion being returnable to the handlers on a pro rata basis.

This decision overrules the letter opinion of J. H. Broadhurst, Assistant Attorney General, delivered November 3, 1937 insofar as it holds that "the committee have no authority to expend any money so collected except by paying that amount over to the Commissioner of Agriculture, which has been requisitioned by him" and also the opinion of H. L. Williford, Assistant Attorney General, delivered September 13, 1938, to the same effect.

Trusting that we have fully answered your inquiry, we are

Yours very truly

ATTORNEY GENERAL OF TEXAS

By

Dick Stout
Assistant

DS:ob

APPROVED:

ATTORNEY GENERAL OF TEXAS